## State Mutual Fire Insurance Company *versus* Arthur.

On a special traverse, the issue is on the fact stated in the inducement; the matter denied under the *absque hoc* is admitted, except so far as the inducement amounts to a denial.

To a declaration on a policy of insurance against fire, the defendants pleaded that the policy was made upon condition that if the interest in the property insured, was a leasehold, or other interest not absolute, it must be so stated in the policy, otherwise the policy should be void, and that the interest of the plaintiff was not absolute, and was not so stated in the policy; to which the plaintiff replied, that he was, at the time of making the policy, seised of an absolute estate in the premises, to wit: of a fee simple, in right of his wife, and that his interest was well known to the defendants, and truly described to them at the making of the policy, and that the description of his interest as set forth in the policy, was made by the defendants, after the same was so described to them, *without this*, that the condition mentioned in the plea was violated or broken; and the defendants rejoined, reasserting the breach of the condition: *Held*, that the rejoinder was good; the fault, if any, being in the replication.

In an action on a policy of insurance, the defendants pleaded a breach of the plaintiff's warranty, being the condition upon which the policy was made: *Held*, that it was no answer to the plea, that the defendants knew, at the time of making the policy, that the warranty was untrue in fact.

Such knowledge might relieve against a false or imperfect representation, but not against a warranty.

The materiality of the thing warranted to the risk, is of no consequence. Compliance with it is a condition precedent to any recovery upon the contract.

Where a policy of insurance provided that, in case the insured buildings should be used for the purpose of carrying on any trade, &c., which would, in any way, increase the risk, *as described in the application and survey* (unless the same should be agreed to by the insurers and endorsed in the policy), then the policy should be void: *Held*, that the standard by which the risk of any other trade, &c., carried on in the insured buildings, was to be estimated, was that described in the application; and not the actual prior use of the property, as known to the insurers.

ERROR to the District Court of *Philadelphia*.

This was an amicable action of *assumpsit*, by Gann Arthur against The State Mutual Fire Insurance Company, upon a policy of insurance against fire, issued by the defendants on the 25th June 1852, whereby they insured the plaintiff, for the term of one year, against loss or damage by fire to the extent of $1400, on his two brick tenements, occupied by tenants, situated adjoining, on the corner of Main and Biddle streets, in Wheeling, Virginia. The property insured was destroyed by fire on the 18th January 1853.

[State Mutual Fire Insurance Company *v.* Arthur.]

The plaintiff declared in *assumpsit* upon his policy; to which the defendants put in the following special pleas:—

1. And for a further plea in this behalf, the said defendants by leave, &c., say, that the said plaintiff ought not to have or maintain his action aforesaid, &c., because they say that the said policy of insurance in the said declaration mentioned, was made upon the condition and warranty of the said plaintiff, that the said two brick tenements in the said policy and declaration mentioned, and each of them, were, at the time of the making of the said policy, used as dwellings by tenants, and not otherwise; whereas, in truth and in fact, the said tenements were, at the time of the making of the said policy and warranty, and for a long time afterwards, to wit, for the space of five months, used and occupied as boarding-houses, for the boarding, accommodation and entertainment of divers disorderly persons not being tenants thereof; by means whereof, the said warranty and condition were broken, and the said policy of insurance became, and was, null and void and of no effect; and this the said defendants are ready to verify.

2. And for a further plea in this behalf, the said defendants by leave, &c., say, that the plaintiff ought not to have, &c., his action, &c., because they say, that the said policy in the said declaration mentioned, was made upon the condition and warranty of the said plaintiff, that the said two brick tenements, and each of them, in the said policy and declaration mentioned, were, at the time of the making of the said policy, used as dwellings by tenants, and not otherwise; whereas, in truth and in fact, one of the said tenements, to wit, the tenement situated at the corner of Main and Biddle streets, and adjoining both the said streets, was, at the time of the making of the said policy and warranty, and for a long time afterwards, to wit, for the space of five months, used and occupied in part, for a store, candy or cake shop, and the remainder thereof as a boarding-house, for the boarding, accommodation and entertainment of divers disorderly persons not being tenants thereof; by means whereof, the said warranty and condition were broken, and the said policy became, and was, null and void and of no effect; and this the said defendants are ready to verify.

3. And for a further plea in this behalf, the said defendants by leave, &c., say that the plaintiff ought not to have, &c., his action, &c., because they say, that the said policy and contract of insurance in the declaration mentioned, was made upon and in pursuance of a certain written and printed application and survey, in which the said two brick tenements, situated as in the declaration is mentioned, are described and represented as being used for the purpose of dwellings by tenants, and not for any other use or purpose. And the defendants further say, that after the making of the said policy and contract of insurance, and during the con-

[State Mutual Fire Insurance Company *v.* Arthur.]

tinuance thereof, to wit, on the third day of November A. D. one thousand eight hundred and fifty-two, one of the said tenements, to wit, the tenement situated at the corner of the said Main and Biddle streets, and adjoining on both the said streets, was appropriated, applied, and used by, and with the knowledge, agreement, and consent of the said plaintiff, to, and for the purpose of carrying on, and exercising therein, the trade, business, and vocation of varnishing and finishing cabinet furniture and ware, and of keeping and vending the same, and continued to be so used and occupied for a long time afterwards, to wit, for the space of two months and a half, and until the loss, damage, and destruction of the said tenements complained of by the plaintiff as aforesaid, without the consent of the said defendants in writing, added to the said policy, or endorsed thereon, in manner and form as set forth in the declaration of the plaintiff aforesaid; by means of which appropriation, application, and use of the said last-mentioned tenement, the risk undertaken and assumed by the said defendants, by the policy and contract of insurance aforesaid, was increased, and became greater than the risk as described in the said application and survey, and thereupon the said policy and contract of insurance became and was of no force and effect, and continued to be without force or effect, until, and at the time of the loss, damage, and destruction complained of by the plaintiff as aforesaid, and afterwards; and this the said defendants are ready to verify.

4. And for a further plea in this behalf, the said defendants, by leave, &c., say, that the said plaintiff ought not, &c., because they say, that the said plaintiff was not interested in the said two brick tenements, in the said supposed policy of insurance mentioned, in manner and form as the said plaintiff hath in his said declaration above alleged. And of this the defendants put themselves upon the country, &c.

5. And for a further plea in this behalf, the said defendants, by leave, &c., say, that said plaintiff ought not, &c., because they say, that the said policy was made upon the condition that, if the interest in the property insured, was a leasehold, or other interest not absolute, it must be so stated in the policy, otherwise the policy should be void. And the said defendants further say, that the interest of the said plaintiff, in the said tenements, in the said declaration mentioned, was not absolute, and was not so stated in the said policy; and this they are ready to verify.

To these pleas the plaintiff filed the following replications:—

1. And the said plaintiff, as to the said plea, by the said defendants first above pleaded, says, that he ought not, by reason of anything therein alleged, to be barred from having and maintaining his aforesaid action against them, because he saith, that at the time of the making and issuing the said policy, the defendants

[State Mutual Fire Insurance Company *v.* Arthur.]

well knew that the said two brick tenements (in the said policy and declaration mentioned) were used as boarding-houses for the accommodation and entertainment of persons not being tenants thereof, and also in what manner the same were occupied; and well knowing this, the said defendants through their agents, duly authorized, themselves prepared and filled up the written and printed form of the said policy, and of the conditions thereto attached, and inserted therein the description of the said two brick tenements in the said policy and declaration mentioned; without this, that the said policy was made upon the condition and warranty of the said plaintiff, in manner and form as by the said defendants is in their said plea alleged; and this the plaintiff is ready to verify.

2. And the said plaintiff, as to the defendant's plea, second above pleaded, saith, that he ought not, by anything therein contained, to be barred from having and maintaining his aforesaid action against them, because he says, that at the time of the making and issuing of the said policy, in the said declaration mentioned, the defendants well knew that the said tenement, situate at the corner of Main and Biddle streets, and in the said plea described, was used in part as a store, candy or cake shop, and the remainder thereof as a boarding-house, for the boarding accommodation and entertainment of persons not being tenants thereof, and also in what manner the said tenement was occupied; and well knowing this, the said defendants, through their agents, duly authorized, themselves prepared and filled the printed form of the said policy, and of the conditions thereto attached, and inserted therein the description of the said tenement in the said plea described, and in the said policy mentioned; without this, that the said policy was made upon the condition and warranty of the said plaintiff, in manner and form as by the said defendants is in their said plea alleged; and this the plaintiff is ready to verify.

3. And the said plaintiff, as to the said plea, by the said defendants thirdly above pleaded, saith, that he ought not, by anything therein contained, to be barred from having and maintaining his aforesaid action against them, because he saith, that the risk undertaken and assumed by the said defendants, by the policy and contract of insurance aforesaid, was not by means or reason of anything in the said plea alleged, increased, nor did it become greater than the risk as described in the said application and survey; and this he prays may be inquired of by the country.

4. On the fourth plea, the plaintiff took issue.

5. And the said plaintiff, as to the plea of the defendants, fifthly pleaded, says that the said plaintiff was, at time of the making of said policy, seised of an absolute estate in the premises, to wit: of a fee simple, in right of his wife, and that his interest

[State Mutual Fire Insurance Company *v.* Arthur.]

was well known by the defendants, and truly described to them at the making of the said policy, in the declaration mentioned; and that the description of the said plaintiff's interest or estate, as set forth in the policy, was made by defendants, after the same was described to and known by them as aforesaid; without this, that the condition in the plea mentioned was violated or broken; and this the plaintiff is ready to verify.

The rejoinders of the defendants were as follows:—

1. And the said defendants, as to the said replication of the said plaintiff, to the plea of the said defendants, first above specially pleaded, say, that by reason of anything in the said replication alleged, the said plaintiff ought not to have or maintain his aforesaid action against the said defendants, because they say, that the said policy of insurance in the said declaration mentioned, was made upon the condition and warranty of the said plaintiff, that the said two brick tenements in the said policy and declaration mentioned, and each of them, were at the time of the making of the said policy used as dwellings, by tenants, and not otherwise, as in the said plea alleged. And of this the said defendants put themselves upon the country.

2. And the said defendants, as to the said replication of the said plaintiff, to the plea of the said defendants, secondly above specially pleaded, say, that by reason of any thing in said replication alleged, the said plaintiff ought not to have or maintain his aforesaid action against the said defendants, because they say, that the said policy in the said declaration mentioned, was made upon the condition and warranty of the said plaintiff that the said two brick tenements, and each of them, in the said policy and declaration mentioned, were at the time of the making of said policy, used as dwellings by tenants, and not otherwise, as in the said plea alleged. And of this the said defendants put themselves upon the country.

3. And the said defendants, as to the said replication of the said plaintiff, to the plea of the said defendants, thirdly above specially pleaded; and which the said plaintiff hath prayed, may be inquired of by the country, do the like.

5. And for a rejoinder to the replication to the fifth plea, the defendants say that the plaintiff ought not to have or maintain, &c., because they say, that the interest of the said plaintiffs in the said premises was not absolute, and was not so stated in the said policy, and of this they put themselves upon the country.

The plaintiff demurred to this rejoinder, and assigned the following causes of demurrer:—

In that the said rejoinder does not directly traverse the material question or fact in issue by the replication, to wit, whether under the facts set forth in the replication, there was a material misde-

[State Mutual Fire Insurance Company *v.* Arthur.]

scription within the true intent and meaning of the policy; nor does it seek to avoid the same, but admits the same to be true; and for that the said replication merely reiterates a part of the matter already alleged in the plea, whereas if it was intended to avoid the matters set forth in the replication, the proper form was to join issue on the traverse that the condition was not broken.

And also because the rejoinder seeks to put in issue, to be tried by the jury, a question of law, viz.,whether the interest of the plaintiff, as set forth in the plea, was truly described within the meaning of said condition in the plea mentioned, and whether the same was absolute or otherwise; and also because it seeks to put in issue to be tried by a jury, the matter of fact which is admitted by the plea, viz., what the interest of the plaintiff was in the said premises, which is an immaterial issue, unless coupled with the other facts set forth in the said replication, viz., that the defendants knew of the nature and character of the interest of the plaintiffs in the premises, and with such knowledge themselves described the interest in the manner they saw fit to do, which said facts are not traversed, nor are the same avoided in such way that the plaintiff could safely join issue thereon, but an effort is made to reduce the issue to a verbal and immaterial *one*, viz., whether the interest was absolute, and was so stated.

And for that the rejoinder is uncertain in this, that it is uncertain whether it is intended to traverse the allegation of what the interest was, as set forth in the replication, or whether it is intended to deny or put in issue that such an interest is or is not an absolute one within the terms of said contract declared on.

The court below gave judgment for the plaintiff on this demurrer.

It appeared on the trial, that N. L. Dorsey, of Wheeling, was an agent of the defendants, for the purpose of receiving applications, making surveys, receiving premium notes and cash premiums, and for no other purpose. His appointment was in writing. He had no power to issue policies.

The policy upon which this suit was brought, was procured by him.

The title of the tenements insured, at the date of the policy, was vested in the wife of the plaintiff and her sister Sarah Jane Newman, by descent from their father William Donaldson, deceased, and continued to be so vested until the 12th of November 1853, which was more than four months after the expiration of the policy, and nearly ten months after the alleged loss. The policy purported to have been made and accepted in reference to the written application and the conditions thereto annexed, both of which were declared in the body of the policy to be a part thereof, and the assured covenanted and engaged that the representation given in the application for the insurance, was a warranty on his part, and

that it contained a just, full, and true exposition of all the facts and circumstances in regard to the condition, situation, and value of the risk, so far as the same were known to the assured and material to the risk; and that if any material fact or circumstance had not been fairly represented then, the policy should cease and be of no effect.

It was also agreed and declared by the policy, to be the true intent and meaning of the parties thereto, that in case the said buildings should at any time after the making and during the continuance of the insurance, be appropriated or applied, or used to or for the purpose of carrying on or exercising therein any trade, business, or vocation, which would in any way increase the risk as described in the application and survey, or for the purpose of storing, keeping, or vending therein any articles, &c., denominated hazardous or extra hazardous, unless therein specially provided for, or thereafter agreed to by the defendants in writing, and added to or endorsed upon the policy, then and from thenceforth, so long as the said buildings should be so appropriated or used, the policy should cease and be of no effect.

By the first condition annexed to the policy, it was provided that the application should specify, by whom the buildings insured were occupied, whether as a private dwelling or how otherwise; that the description or specification should be signed by the applicant, and be deemed a part of the policy and a warranty on the part of the insured.

By the second condition, it was provided, that if the interest in the property to be insured be a leasehold or other interest not absolute, it should be so stated, otherwise the policy should be void.

The plaintiff in his application described the buildings as "two brick tenements," without stating or describing in any way his interest therein, and in reply to the question for what purpose the tenements were used, and by whom, answered that they were used as "dwellings by tenants." In point of fact, both tenements were used, at the time of the application, as boarding-houses, which were of a disorderly character, and in the corner room of the corner house, a store was kept.

About two or three months before the fire, Darby Clark, who had occupied the corner house as before mentioned, moved out of it, and Day & Harkins took possession of it as a cabinet-ware and finishing establishment. H. Jamison, the plaintiff's agent, and a witness of the plaintiff, testified that there was no consent given by the defendants' agent to the agent of the plaintiff, until sometime thereafter; although N. C. Arthur testified that Mrs. Arthur, the wife of plaintiff, called on them, and inquired if they would consent to the change, and that they replied they had no objection, but that it should be endorsed upon the policy.

There was no evidence that this change of the occupation was sanctioned by the company, or even reported to them until after the alleged loss.

There was no evidence that N. C. Arthur was an agent of the company for any purpose whatever. He was simply a partner of N. L. Dorsey in his general business.

The application was countersigned by N. L. Dorsey, and not by Dorsey & Arthur; but there was no evidence that N. L. Dorsey had any authority to agree to any change in the occupation which would increase the risk.

It was proved, that Day & Harkins used turpentine and varnish in carrying on their business, and that they kept these articles constantly on hand in greater or less quantities; that the fire commenced in the house occupied by them, and that far the greatest part of the damage was done to that house; that they paid one and a half per cent. premium (more than twice the rate paid by the plaintiff) for insurance of their stock, to the Insurance Company of the Valley of Virginia, and that they claimed damages from that company for the loss of turpentine and varnish.

It was also proved, that the customary rates of insurance for a cabinet-ware room, and finishing shop of cabinet-ware, is twice or thrice greater than the customary rates charged upon dwelling-houses, and that the rates of insurance are generally much greater at Wheeling than in this city.

None of the witnesses pretended to say that the occupation of the corner house by Day & Harkins for the purposes of their business, did not increase the risk beyond that described in the application and survey. But the plaintiff interrogated his witnesses first, as to the extremely bad character of the boarders of Clark & Welsh, and secondly, as to the risk of such boarding-houses comparatively with the risk of the business of Day & Harkins.

The court below (SHARSWOOD, P. J.) delivered the following charge to the jury:—

"The defendants have here pleaded specially four different pleas, and as many issues have been raised, to the determination of which, in the first instance, your attention is to be confined.

"1. The first plea in substance alleges that the premises were, at the time the policy was made, not used as dwellings by tenants, but were used 'as boarding-houses for the boarding, accommodation and entertainment of divers disorderly persons, not being tenants thereof.' To this the plaintiff in substance has replied, that the representation that the tenements were used as dwellings by tenants, was inserted in the application by the agents of the said defendants, with a full knowledge on their part that the said tenements were used as boarding-houses.

" This the defendants have denied.   This is the first issue you are to consider and decide upon the evidence (see also second issue, which the court stated).   And under these issues several questions have been raised and discussed.   It appears that N. L. Dorsey was appointed the agent of this company.   His authority was in writing, and by the terms of the writing was a special one. It was ' to make surveys, and to receive applications, premium notes, and cash premiums for said company.'   It appears that Mr. Dorsey had a partner with him in the business of insurance agency whose name was Arthur.   In point of fact, the insertion of these words in the application was made by him—Dorsey countersigned it.   The company deny altogether that Arthur was their agent, and allege that neither Dorsey nor Arthur had any authority to waive any condition or warranty contained in the policy.

" Did Dorsey or Arthur, or both of them, know when they received this application, that the premises were occupied as boarding-houses ?   Dorsey says, that he knew that the houses were occupied as boarding-houses, though not the kind of boarders. About Arthur's knowledge, if he is to be believed, there can be no question.   He knew that they were boarding-houses and what kind of boarding-houses; and he tells us that the rate of premium was fixed at seventy instead of fifty cents on that very account.

" Was Arthur an agent of this company ?   That is a question of fact for you—you have his own testimony as to his having transacted business for the company ; which they sanctioned.   You have the correspondence.   It is strongly urged that the bare authority of these agents was to receive applications, and the assured must see to it that the description contained in the application is right. You will observe, however, that Dorsey's authority was to make surveys as well as receive applications—in other words, he was appointed to examine the premises to be insured.   I am of the opinion, and therefore instruct you, that if an agent, authorized to make surveys and receive applications, with a full knowledge of all the facts, fills up an application with a description which is not false in fact, but insufficient only, as not fully representing the risk, gets the applicant to sign it, and thereupon a policy issues, the company is bound by it.   I agree, that if the description contains a misrepresentation—if it is false in fact, then the company is not bound.   It would not help the matter that the agent knew it.   It would be a fraud by the agent on his employers, and the assured would be a party to that fraud.   Now the description was true, ' dwellings by tenants.'   That the tenants kept boarding-houses was a fact which may or may not have been material to the risk.   If the jury believe that Dorsey and Arthur were the agents of this company—to make surveys and receive applications—that they, or either of them, with a full knowledge of the facts, without any concealment or misrepresentation by plaintiff, filled up this

[State Mutual Fire Insurance Company *v.* Arthur.]

application, and procured the plaintiff's signature, then, in law, it is the same thing, as if the true full description were inserted in this application, as it ought to have been.   The knowledge of the defendants' agents for this purpose was the knowledge of defendants.   The description contained in the application was a mutual mistake of the parties.   Equity will reform the instrument to make it correspond to their intentions—equity is part of the law of Pennsylvania.   The law considers, in this state, that as actually done which a chancellor would decree to be done; and a chancellor would decree, upon clear evidence that by mutual mistake a misdescription had been inserted in a contract, that it should be corrected.   If there was this mistake in this case—if it is clearly proved by the evidence to your satisfaction, that the agents of the company, and the insured, were both perfectly aware of the manner in which this property was used and occupied, and the application was filled up by the agents of the company, then it is to be regarded, to all intents and purposes, as if the proper description had been inserted in the policy.

"It is contended that this is a mutual insurance company— that the plaintiff by the very act of effecting this insurance became a member of this company, and that *ipso facto* the agents of the company became for this purpose his agents, and he cannot set up their default or mistake against the company.   I bow to the authority of decided cases.   It would be, however, in this instance, with great reluctance, if I thought they established such a general principle.   A corporation is a legal entity, an artificial person, as distinct from the individual members as from strangers.   A stockholder of a bank or an insurance company, in a contract with the corporation, stands upon the same footing as a stranger, unless there is something special in the charter or by-laws of the company to establish a different rule. He acts for himself in making the contract, and the corporation acts for itself by its agents or officers—they can only act by officers or agents.   I agree, that if it was a part of the charter or by-laws of this company, that the agent employed to make surveys and receive applications for this company, should be regarded as the agent of the assured, the plaintiff would have no remedy.   I consider that as a very hard rule as applied to a man who becomes a member by the mere fact of making the contract in question— and who was not shown to have known of the by-laws.   It is however the law—but it is not the law of this case.   Here there was no charter—no by-law to that effect—at least none has been shown.   So far from it, the certificate of agency of Dorsey states expressly that 'he is authorized to make surveys and receive applications for said company.'   I agree, also, that if the assured puts his hand to a positive misrepresentation, it will not help him that the agent of the company knew it to be so.   No corporation

[State Mutual Fire Insurance Company v. Arthur.]

would be bound by the act of an agent under such circumstances. It would be a fraud, and the assured would be as much a party to the fraud as the agent. If, therefore, you are of the opinion that Dorsey and Arthur knew the facts of the case—that they or either of them filled the application with that knowledge—and if you believe they were the agents of the company, to make surveys and receive applications, you may find for the plaintiff upon the first issue.

" The second plea of the defendants alleges that the premises were described as ' dwellings by tenants'—one of the tenements was occupied and used as a cake or candy shop. The plaintiff's replication to this is similar to the first—that the fact was known to the agents of the defendants, and the description inserted by them, with a full knowledge on their part, that one of the tenements was so used. I need not repeat what I have remarked upon the first issue.

" The third plea is in substance that after the policy was made, and before the fire occurred, a change was made by the assured in the use of the premises, by appropriating one of the tenements to and for the purpose of carrying on and exercising the trade of varnishing and finishing cabinet furniture and ware, and keeping and vending the same, whereby the risk assumed was increased and became greater than the risk described in the application. The fact of the change is admitted, and the plaintiff takes issue upon the question whether the risk was thereby increased.

" Much stress is laid by the defendants upon the words used in this issue. The risk described in the application—they say that was dwellings by tenants, and they contend that the entire testimony shows that the risk of a furniture wareroom is greater than that. But what was the risk described in the application ? That is a question of fact for the jury. Here the principles already adverted to become again applicable. If there was a misdescription in this application by the agents of the company, with a full knowledge of the facts—no misrepresentation or concealment on the part of the assured—a mutual honest mistake—then this description ought to be reformed—the risk was not properly described in the application—equity, and that is law in Pennsylvania, will consider it as actually reformed, and will, to all intents, regard the application as though it was drawn just as it ought to have been drawn. If that was the case here—and that is for the jury to decide—then, upon this issue, they will have to consider whether the risk, which was actually assumed, was increased by the change. If it was, find for the defendant. If not, for plaintiff. If, however, they shall be of opinion upon the first and second issues with the defendants, and so find that there was no knowledge by the agents of the company—no insertion by them in the application—no mutual mistake—then of course they will say whether

the change increased the risk above that of 'dwellings by tenants.' I direct you entirely to disregard all the evidence given in regard to the application of Mrs. Arthur for liberty to make the change—as without an actual endorsement in writing it was all of no avail—at least so far as this issue is concerned.

"The fourth issue is, whether the plaintiff was interested in the premises. If plaintiff's wife having been tenant in common, and upon proceedings in partition, these premises had been allotted to her, in severalty, by commission, and if you believe the only evidence in the case, that by the law of Virginia she became equitably entitled in severalty from the time of the report—and that was before the policy, and the husband, by the birth of living issue, by the law of Virginia, was tenant by the curtesy, then find for plaintiff on this issue.

"If, on the whole case, you are for plaintiff, then assess the damages. This is for jury."

The jury found for the plaintiff on all the issues, and assessed his damages at $1200. Judgment was subsequently entered on the verdict; whereupon the defendants removed the cause to this court, and here assigned 34 specifications of error; which may be reduced to two classes. 1. The charge of the court below. 2. The admission of evidence relating to the same matters complained of in the charge; and which are fully reviewed in the opinion of this court.

*Gest* and *Joel Jones*, for the plaintiff in error.—This cause was tried upon four special issues: the first plea set forth a warranty of the plaintiff, and alleged a breach of it as to both the tenements insured. The second set forth the same warranty, and alleged another breach as to one of them.

To these pleas the plaintiff replied, by way of a special or formal traverse of the warranty (not of the breach), the inducement of which was evidently framed with a view to the case of Howard Insurance Company *v.* Bruner, 11 *Harris* 50, although the matter alleged by way of inducement to the traverse, does not bring *this* case case within the principle of *that*, and is insufficient in itself to support the traverse of the warranty under the *absque hoc*.

The plaintiff might have traversed the warranty directly without difficulty. He had only to aver that he did not warrant, &c., as the plaintiff alleged, and under a traverse in that form, he might have given in evidence the matter alleged as inducement to his special traverses, provided the matter was pertinent and sufficient to maintain them; and if not, it is insufficient as inducement to his special traverse.

By presenting his answer to these pleas in this form, he submitted to the court, as matter of law, that which would have gone to the

[State Mutual Fire Insurance Company *v.* Arthur.]

jury, under the charge of the court, if the common or direct traverse had been adopted : *Steph. on Pl.* 200.

Had the facts alleged in the inducement been undisputed, the defendants would have demurred. This would have raised the question whether the inducements are sufficient to support the traverses, *i. e.*, whether they amount in law to a denial of the warranty. But the defendants denied the truth of the inducements joined in the traverses, and tendered issues upon them to the jury.

Upon the trial of these issues, the court was bound to confine the evidence to the allegations of the inducements. No other facts were put in issue. If any one of these allegations was not true, the jury could not find generally for the plaintiff, because that would put in the power of the plaintiff to maintain his traverse by an inducement in part false. In such a case, the jury would be bound to find generally for the defendants, or specially find the facts proved.

Assuming, however, for the present, that these issues were properly tried and found, we proceed to consider the sufficiency.of the replications in point of law, as if the defendants had demurred. This we have the right to do ; for if they are defective, the verdict does not cure them nor enlarge them. The verdict can establish only their truth—not their sufficiency.

In regard to pleadings in this form, the principle is, that when the inducement and the traverse are properly fitted to each other, and go to the same point, a joinder in the traverse includes a negative of the inducement, because the traverse is but a conclusion from the inducement, and is added simply to prevent the fault of argumentativeness : *Steph. on Pl.* 202.

The inducement must therefore be sufficient in matter : *Cro. Car.* 266, 336 ; *Bac. Abr.*, Pleas and Pleadings, H. 1 ; that is, it must involve necessarily a negative of the fact traversed : 2 *Saund. Rep.* 332, 333 ; in this case, of the warranty pleaded by the defendants : *Stephen on Pl.* 202. These replications will not abide this test, and, consequently, the finding of the jury does not negative the warranty alleged in the plea, the breach of which is confessed.

The principle upon which these replications rest, is this : that in contracts of insurance, a man cannot bind himself by a warranty to another, who knows the facts warranted against.

The rule which prevails upon sales of personal property—that a general warranty does not extend to defects which are known to the purchaser—does not apply to warranties contained in policies. of insurance. On the contrary, the general rule is, that " where the policy on its face is clear and explicit, no parol evidence *aliunde* can be admitted to contradict, control, restrain, or extend it : Jennings *v.* Chenango, &c., Ins. Co., 2 *Denio* 79 ; Higginson *v.* Dall, 13 *Mass.* 99 ; Kennedy *v.* St. Lawrence, &c., In-

[State Mutual Fire Insurance Company *v.* Arthur.]

surance Co., 10 *Barb.* 289–90; Pawson *v.* Watson, *Cowp.* 788; *Parke on Insurance* 320.

Howard Co. *v.* Bruner, 11 *Harris* 56, 57, relied upon by the plaintiff, is greatly misunderstood, if it is supposed to be at variance with these authorities. It does not decide that the insurer's knowledge of a fact warranted against nullifies the warranty or prevents it from arising. Bruner's application for insurance was treated as though it had been a mere verbal application, without any description or representation by him whatever.

The law is well settled "that if a warranty in a fire policy be broken, the insured cannot recover, whether the facts warranted against are material or not:" Kennedy *v.* St. Lawrence Ins. Co., 10 *Barb.* 286; 2 *Archb. N. P.* 277. It is immaterial to what cause the non-compliance is to be attributed; for if the fact be that the warranty was not complied with, though, perhaps, for the best reasons, the policy has no effect: Bond *v.* Nutt, *Cowp.* 607.

The reason is in the nature of the warranty. It is a contingency or a condition precedent, that a certain thing exists, or shall happen, or be done, or if not, there is no contract: De Hahn *v.* Hartley, 1 *T. R.* 345; Mackie *v.* Pleasants, 2 *Binn.* 372; Blackhurst *v.* Cockell, 3 *T. R.* 361. Hence a warranty must be complied with in all respects, even in those which do not seem to affect the risk: Wall *v.* Howard Ins. Co., 14 *Barb.* 385. It would be dangerous to introduce a loose construction of such contracts: Ogden *v.* Ash, 1 *Dall.* 163; Schwartz *v.* Ins. Co. of N. A., 6 *Binn.* 384; Hartman *v.* Keystone Ins. Co., 9 *Harris* 477.

The third issue was upon the plea alleging a change of the use and occupation of the corner tenement from a dwelling to a cabinet-ware shop, for the purpose of carrying on the business of finishing, and varnishing, and vending cabinet furniture, &c., whereby the risk was increased, &c., beyond that described in the application and survey. The plaintiff replied to this plea by traversing the increase of the risk, &c., beyond that described in the application and survey.

The issue thus formed was very precise, and there was no dispute upon the evidence pertinent to the issue. The risk described in the application was "dwellings by tenants." In the business of Day & Harkins, turpentine and varnish, extra hazardous articles, were used; and it appeared the fire originated in the building occupied by Day & Harkins. All the witnesses concurred in saying that the risk of the business of Day & Harkins was greater than the risk of dwellings occupied by tenants.

It was the duty of the court to try this issue as joined; the jury were sworn to do so; but the learned judge permitted the plaintiff to substitute a different issue, and admitted evidence not relevant to the issue actually joined.

We proceed now to consider the fifth plea, which was founded

[State Mutual Fire Insurance Company v. Arthur.]

on the second condition of the policy: "That if the interest in the property to be insured be a leasehold, or other interest not absolute, it must be so stated in the policy, otherwise the policy shall be void." This plea averred, in substance, "that the interest of the plaintiff was not absolute, and was not so stated in the policy." The plaintiff rejoined to this plea, also, by way of a special traverse, "that he was seised of an absolute estate in the premises, to wit, of a fee simple in right of his wife, &c.; without this, that the condition in the plea mentioned was violated or broken; concluding with a verification, &c.

This is the whole substance of the replication. Every other matter in the inducement, in truth, is surplusage. For it was sufficient that the plaintiff had the absolute estate in fee simple, which he averred, whether the defendants knew it or not.

There was, therefore, no ground whatever for this demurrer. The fault, if there be one, is in the replication.

*Bullitt* and *McMurtrie*, for the defendant in error.—The defendants, by preferring to plead specially what was the proper subject of the general issue, and by then pleading so badly that their pleas would not have availed them if they had a verdict, brought about a series of issues, which the court forced into substantial ones, such as must have been intended, if anything more than a play upon words was designed, and now complain of the consequences of their own course.

It is said, that the inducement is no answer to the first and second pleas.

The pleas are bad on general demurrer, and therefore this is immaterial. The replications are strictly within the decision of Howard Ins. Co. *v.* Bruner; whether proved, is a wholly distinct matter. They aver knowledge of the facts by the defendants, and that the defendants, considering the words used in describing the risk as the proper ones, selected them for that purpose.

There was no proof of any warranty; it rests on the concession in the replication. It is obvious that no question on the admissibility of parol testimony can arise till a written contract is shown to exist. The warranty is a mere creature of the imagination of the pleader; and as such the evidence was admissible if the replication was good.

As to the demurrer to the rejoinder to the replication to the fourth plea, the substantial issue was, was there a breach of the condition as to the description of the estate or interest?

The opinion of the court was delivered by

STRONG, J.—This case was tried with very little regard to the issues which had been formed between the parties. The plaintiff below declared upon a policy of insurance. To this declaration

the defendants pleaded a breach of the plaintiff's warranty, made in the application, which by the terms of the policy was made a part thereof, and the representations of which were agreed to be warranties on the part of the assured. By the conditions of insurance, also made a part of the policy, applications were required to state "by whom the property (was) is occupied, whether as private dwellings or how otherwise," and the application in this case stated in answer to the question "for what purpose used and by whom?" "*dwellings by tenants.*" The pleas charged that the plaintiff had warranted that the buildings insured were at the time the policy was made, used as dwellings by tenants and not otherwise, and the breaches assigned were, that at the time of making the policy, and long afterwards, they were used as boarding-houses for disorderly persons, not tenants, and that one of them, at the time of making the policy and long afterwards, was used in part as a store, candy or cake shop, and in part as a boarding-house for the accommodation of disorderly persons, not tenants. To these pleas, the first and second, the plaintiff replied, not by denying the breaches charged, nor by traversing the warranty directly, but by averring as inducement, that at the time the policy was issued, the defendants knew that the buildings insured were occupied as boarding-houses, for the accommodation of those not tenants, and that they knew that one was occupied, in part, as a store, cake or candy shop, and in part as a boarding-house, *without this*, that the policy was made upon the warranty of the plaintiff, as averred in the pleas. The defendants rejoined by reasserting the warranty, and put themselves upon the country, and the plaintiff did the like. Thus the first and second issues were formed.

It is plain that the breaches of the warranty pleaded, were not put in issue. They were admitted. Nor was the existence of the warranty itself traversed, except so far as the inducement of the plaintiff's replication amounted to a denial of it. What were then the facts in issue? Nothing more than knowledge by the defendants of the manner in which the buildings insured were used at the time when the policy was made. The single question was, whether the defendants knew of the occupancy of the buildings as boarding-houses for disorderly persons, not tenants, and as a store, candy or cake shop, when they subscribed the policy. Yet under this simple issue, the assertion and denial of a single fact, the court admitted evidence of the manner in which the property was occupied; and, also, evidence that the mode of occupation, unlike that stated in the warranty, was known to the agents of the defendants, constituted only to receive applications and make surveys, but with no power to make contracts. Under the same issues the jury were instructed, that knowledge by such agents was knowledge by the defendants; that if the agents knew the

facts, filled up the application, and procured the plaintiff's signature, it was the same thing as if a true full description had been inserted in the application, as it ought to have been; and that the description was a mutual mistake of the parties which equity would reform. These things were not in issue, and we think the court was in error in permitting their introduction. Nor did the error terminate with the irrelevancy of the evidence and instruction to the jury. The issue tendered by the plaintiff, in his replication to the pleas, was no answer to them. Knowledge by the underwriters of the breach of a warranty, at the time it is made, does not relieve the assured from the consequences of the breach, or convert the engagement into a different warranty. It may relieve against a false or imperfect representation, but not against a warranty. The purpose in requiring a warranty is to dispense with inquiry, and cast entirely upon the assured the obligation that the facts shall be as represented. Compliance with his warranty is a condition precedent to any recovery upon the contract. It is therefore that the materiality of the thing warranted to the risk is of no consequence. The assured, by his warranty, engages that, whatever may be the condition of things when he makes his application, the facts shall be as warranted when the policy attaches. The building may be occupied as a powder magazine to-day, but when the risk commences, it must be what he has warranted. Knowledge by the underwriter, or by him and the assured, is no basis for reforming the policy, though it is conceded that equity will reform it, in the case of mutual mistake of facts. The error of the court below, in this case, seems to have been in treating the pleas as averring a representation, when they alleged a warranty. It is not true that the rule which prevails in sales of personal property, namely, that a warranty does not embrace defects known to the purchaser, is also extended to warranties contained in policies of insurance. In Jennings v. The Chenango Insurance Company, 2 *Denio* 79, it is declared that no parol evidence is admissible to contradict, restrain, control, or extend a policy, clear and explicit upon its face. In Kennedy v. The St. Lawrence Mutual Insurance Co., 10 *Barbour* 289, a case in which a breach of warranty was pleaded, the plaintiff replied in avoidance, that the defendants' agent had full knowledge of the facts which constituted the breach, and with such knowledge drew up the application containing the warranty in such manner as he chose. The evidence offered to prove the replication, was rejected as immaterial, and the court above held the rejection right. They remark, with great force, as follows: "It was not denied that the application was signed by the plaintiff, nor that the warranty was broken, but the effect of such breach was sought to be obviated by showing that the defendants' agent drew up the application, and knew of the existence of the buildings, the omission to state

which, constituted the breach of the warranty. It is not perceived how this can affect the case. If the matter stated in the application was to be treated as a representation, and was shown to ·be false, it would affect the validity of the policy, merely on the ground of fraud, and not on account of a breach of a condition precedent. Treating it as a mere fraudulent representation, there would be force in the averment that the defendants' agent knew of the existence of the fact, the concealment of which was made the subject of complaint. But a representation and a warranty are essentially different things, and call for the application of different rules of law. Here was a warranty, and all the cases show that it must be complied with by the assured, as a condition precedent to a recovery. It matters not whether the omission to describe all the buildings was by accident, or from fraudulent design; in either case the insurer is not liable, unless the condition be performed." All this is undoubted law, and is directly applicable to the case now before us.

The decision in The Howard Fire Insurance Company *v.* Bruner, 11 *Harris* 50, is erroneously supposed to assert a different doctrine. Far otherwise. It was made upon the basis that the assured had made no warranty. There the defendants' agents had authority to take risks. Not, as in this case, merely to receive applications and make surveys. True, the assured had put his name to what was an application in form, but which, under the circumstances, was held to be no application; nothing but the act of the insurer. The case was not intended to obliterate the distinction between a representation and a warranty.

The same disregard of the real issue joined between the parties under the third plea, is apparent both in the admission of evidence and in the charge of the court. The declaration averred that the application and survey were a part of the policy, and that *it was* agreed by the parties thereto that in case the insured buildings should, at any time after the making and during the continuance of the insurance, be appropriated, applied, or used, to or for the purpose of carrying on or exercising therein any trade, business, or vocation, which would in any way increase the risk *as described in the application and survey* (unless such appropriation should be agreed to by the insurers in writing, and added to or endorsed upon the policy), then and thenceforth the policy should cease and be of no effect. The defendants' third plea averred that after the policy was made, one of the buildings insured was, with the consent of the assured, appropriated to carrying on the business of varnishing, finishing, and vending cabinet furniture and wares, without the consent of the defendants in writing added to or endorsed upon the policy, whereas the risk described in the application and survey was upon buildings used as dwellings by tenants and not otherwise. And the plea charged that such new appro-

[State Mutual Fire Insurance Company *v.* Arthur.]

priation increased the risk beyond that described in the application and survey. To this plea the plaintiff replied, not denying the new appropriation, nor the neglect to have it endorsed upon the policy, but traversing the fact that the risk was thereby increased, and issue was joined upon that traverse. It was a plain and simple issue. It put to the jury to try whether the use of the buildings as a varnishing, finishing, and sales room for cabinet furniture was more hazardous than their use as mere dwelling-houses for tenants. It put nothing else to the jury. Yet, on the trial of this issue, the plaintiff was permitted to introduce evidence to show that this new use of the property was not a greater risk than occupation of it as boarding-houses for disorderly Irishmen, who were drinking, smoking, and loitering around. That was not the standard with which, under the pleadings, the comparison was to be made. The plaintiff in his replication did not appeal to any other standard than the written application and survey; he set up no mistake in that; he insisted upon no reformation of it, and with that as the rule he went to the jury.

Nor did the court err alone in admitting such evidence. The same mistake was made in the instruction given to the jury. With an issue thus formed, so precise, so single, upon which the parties went to trial, we are unable to see why the jury should have been told that they were to determine what the risk described in the written application and survey was, and that, in determining, they might inquire whether there had been a misdescription by the agents of the company—a mutual mistake; whether, therefore, the application should be reformed, and whether the risk which was *actually* assured was increased by the change. In other words, the jury were instructed that they might apply a different standard from that which the parties had agreed to accept. All this was erroneous.

It is freely admitted that in a proper case, and on sufficient evidence, equity will decree the reform of a policy; but, in this case, the plaintiff, by tendering the issue which he did, asked for no reform, and, if he had asked it, there was no evidence to warrant it. Mere mutual knowledge by the assured and the agents of the insurer of the falsity of a fact warranted, is entirely inadequate to induce a reformation of the policy so as to make it conform with the truth. It is rather evidence of guilty collusion between the agents and the assured, from which the latter can derive no advantage. This was held in Smith *v.* Insurance Company, 12 *Harris* 320. Nor is it easy to see that there is any difference between *suggestio falsi* and *suppressio veri*, if the fact suppressed be material to the risk. In both cases the underwriter is equally wronged, and the assured is, in both, equally a party to the wrong.

We think, also, that the court erred in sustaining the plaintiff's demurrer to the rejoinder of the defendants to the replication to

[State Mutual Fire Insurance Company *v.* Arthur.]

the fifth plea. If the defendants had rejoined in any other way, it would have been a departure. The plaintiff did not confess and avoid the plea. His replication was a traverse in effect, and therefore compelled such a rejoinder as was put in, unless the defendants had chosen to demur specially. The first fault in the pleadings, if any, was in the replication.

We have not thought it necessary to examine separately all the very numerous assignments of error which appear upon this record. They are thirty-four in number. What has been said sufficiently disposes of them all, except the fourth, eleventh, and fourteenth; and, in the view we take of the case, those become entirely immaterial.

We add only that the conclusion to which we have come is, that the jury ought to have been instructed that, upon the whole evidence in the cause, the verdict should be for the defendants.

Judgment reversed and *venire de novo* awarded.