Karp *v.* Fidelity-Phenix Fire Insurance Company, Appellant.

Argued November 16, 1938.

Before Keller, P. J., Cunning-
ham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*Albert M. Cohen,* for appellant.

*Benjamin R. Simons,* of *Syme, Simons & Zisserman,*
for appellee.

Opinion by Keller, P. J., March 3, 1939:

This was an action in assumpsit on an automobile
insurance policy, tried in the municipal court by a
judge without a jury. The trial judge found for the
plaintiff in the amount of $500, and judgment was duly
entered on the finding. Defendant appealed and assigns
for error, (1) the finding, (2) the discharge of its rule
for judgment non obstante veredicto, (3) the discharge
of its rule for a new trial, and (4) the judgment. The
judgment will be affirmed.

On April 20, 1935 defendant company issued to
Barnett Karp, the plaintiff, its 'Combined Comprehen-
sive Automobile Policy,' insuring him for one year
against loss or damage to his 1931 Buick sedan auto-
mobile, not exceeding its actual cash value at the time
any loss or damage occurred and in no event to exceed

$300. The perils insured against included fire, theft, and collision, as well as a number of others not necessary to state; but it was provided that as respects loss or damage to the automobile "caused by collision with any other object ...... the sum of $100 shall be deducted from the amount of each such loss when determined." On October 29, 1935, on payment of an additional premium, a rider or endorsement was added to the policy increasing the amount of insurance to $1,100, and transferring the coverage from the 1931 Buick sedan to a new 1935 Oldsmobile sedan, which plaintiff had just purchased at a cost of $1,114.

The plaintiff, Karp, lived in Philadelphia, but his office or place of business was located in Camden, N. J., and his business was confined to Southern New Jersey. He was manager or business representative for South Jersey of the International Ladies' Garment Union, a labor organization, and he used his automobile principally in traveling about his territory on its business.

On January 22, 1936, while his policy was still in force, and when his new car had been in use less than three months, it was damaged on the highway in a collision with another automobile. Claim was made for the damages alleged to have been sustained, $684, less $100 deductible, which was refused, and this action resulted.

The defendant denied all liability and relied upon the following defenses: (1) Breach of warranty; (2) denial of notice and written proof of loss; (3) averment that total damage did not exceed $141.80, or only $41.80 above the $100 deductible. We will consider them in that order.

(1) The alleged breach of warranty relied on was as follows: Sheet 2 of the policy under the heading, D. WARRANTED BY THE ASSURED, contained six printed subjects with blanks which were filled in in typewriting by the agent. These embraced (1) Assured's occupation or business, (2) employer's name and

address, (3) description of the automobile and the facts respecting its purchase, (4) use of automobile, (5) where automobile is usually kept, (6) whether automobile is fully paid, or encumbered.

The fifth subject or statement was in the following form, the italics showing the inserted typewriting:

"5. The automobile described is usually kept in *public and/or private* garage, located

state whether private or public

*Camden, N. J.*

No.          street          city
                                        ."

county          state

It appeared on the trial that the new automobile which was insured under the rider of October 29, was used by plaintiff in going to his office in Camden, N. J., and in traveling to the different towns in South Jersey where his business as representative of the labor union took him. When he got back to his home in Philadelphia, which happened four or five nights a week, the car was left by him at a public garage nearby; he had no private garage at his home. When away on business at his office in Camden, N. J., or in traveling to towns in South Jersey it was left at a parking lot or in a garage, depending on circumstances.

Our Supreme Court held in *Lycoming Ins. Co. v. Mitchell & Boyle,* 48 Pa. 367, 372, that a warranty in an insurance policy is a *contract relating to an existing fact,* and not a covenant for future acts; and that it differs from a representation in that it is a binding agreement that the fact is as warranted, while a representation is not an agreement that it is so, but such a statement of it as will constitute a misrepresentation if it be untrue. See also, *Western & Atlantic Pipe Lines v. Home Ins. Co.,* 145 Pa. 346, 359, 22 A. 665; *Hoffman v. Mut. Fire Ins. Co. of Reading,* 274 Pa. 292, 299, 117 A. 917. The difference between a warranty and representation is well stated in *Miller v. National Casualty Co.,* 62 Pa. Superior Ct. 417, 420, as follows: "A war-

ranty must be literally true, without regard to its materiality to the risk, while a representation must be true only so far as it is material to the risk."

We are aware that by some authorities and in some jurisdictions a distinction is made between 'affirmative warranties' and 'promissory warranties', but the latter are strictly speaking agreements, covenants or conditions,—depending on their form and strictness—, rather than warranties. A warranty proper, carrying with it the avoidance of the policy in case the fact is not as warranted, is limited to the warranty of an existing fact and will not be extended so as to include promises or agreements as to future acts. Breach of the latter will not be held to avoid the policy unless they are material to the risk insured against.

Some of the 'warranties' in this policy were true warranties; but the fifth one, if attempted to be applied to an automobile purchased six months later, must be construed to be a covenant or agreement as to where the automobile will usually or generally be kept, and to have relation to those items of insurance which are concerned with the keeping or storage of the car, such as fire and theft. It had no relation to the item 'of insurance covering 'collision' while traveling on the highway, such as in this case. That it was not to be construed strictly is seen from the statement inserted in this blank—that the car "is usually kept in *public and/or private* garage, located Camden, N. J.," which, taken literally, is impossible.

We are of opinion that this clause has no materiality as respects a claim for 'collision' damage, occurring on a highway, and cannot be used to defeat a just claim arising under the policy contract from that peril.

(2) Where the defendant has denied all liability on an unsound basis, it cannot subsequently defend on the ground of lack of formal written notice and formal proofs of loss. They may be waived. *Fedas v. Ins. Co. of State of Penna.*, 300 Pa. 555, 559, 151 A. 285. As

the present Chief Justice said in that case: "The utmost fair dealing should characterize the transactions between an insurance company and the insured. If the insurer, having knowledge of a loss, by any act throws the insured off his guard as to the necessity of performing some duty enjoined by the policy, the insurer should not be permitted to take advantage of the failure to act. It has been held many times that an insurance company may waive filing a technical proof of loss."

The evidence showed that the defendant received prompt notice of this loss; that it sent its adjuster to confer with the plaintiff, to whom the plaintiff presented the estimate of damages which he had obtained, showing loss or damage of $684. This adjuster, on the other hand, secured an estimate of $141.80, under which only $41.80 would be payable, and told plaintiff he could take it or leave it; and subsequently denied all liability because the car was not usually kept in a "public and/or private garage in Camden, N. J.". The company, on the trial, admitted the agency of the adjuster and defended on the grounds presented by him. See *Umbras v. Prudential Ins. Co.*, 130 Pa. Superior Ct. 437, 440, 441, 198 A. 470; *Sgro v. Stuyvesant Ins. Co.*, 132 Pa. Superior Ct. 444, 456, 1 A. 2d 554. There is no merit in this position.

(3) We think there was sufficient evidence to justify the court's finding of $500. The policy provided in its General Conditions, "This Company's liability for loss or damage to the automobile described herein shall not exceed the actual cash value thereof at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated accordingly, with proper deduction for depreciation however caused, and without compensation for loss of use, and shall in no event exceed the limit of liability, if any, stated in Paragraph C, [$1100] nor what it would then cost to repair or replace the automobile or parts thereof with other of like kind and quality; such ascertainment or estimate shall

be made by the Assured and this Company, or if they differ, then by appraisal as hereinafter provided."

It is clear, however, that in so far as it relates to the "cost to repair or replace the automobile or parts thereof with other of like kind or quality," it means to put the automobile in as good condition as it was before the collision.

Competent evidence was produced by the plaintiff that the automobile was so badly shattered by the collision that it was impossible to restore it by repairs and replacements to the condition it was in just before the accident. It required a special towing outfit to remove it to the garage and, although a practically new automobile, the most that could be obtained for it towards the purchase of a new car, was $350. Anyone who has had experience with cars which have been damaged in a collision knows that they may be so shattered as to be impossible to be restored to first class running condition. The mere repair or replacement of the outer appearance is not the criterion. While a witness for the defendant testified that the car could be repaired and put into its former condition for $141.80, his evidence was for the judge sitting as a trier of fact, and the evidence of plaintiff's witnesses may have been more convincing to the trial judge. The arbitrary action of defendant's adjuster prevented any recourse to the 'appraisal' contemplated by the policy.

The assignments of error are overruled and the judgment is affirmed.