## DIESINGER v. AMERICAN & FOREIGN INS. CO.

### Nos. 8343, 8348.

Circuit Court of Appeals, Third Circuit.
Argued July 15, 1943.
Decided Sept. 14, 1943.

Rehearing Denied Oct. 19, 1943.

See, also, 2 F.R.D. 221.

Joseph S. Conwell, Jr., of Philadelphia (Pepper, Bodine, Stokes & Schoch, of Philadelphia, Pa., on the brief), for Diesinger.

Horace M. Schell, of Philadelphia, Pa., for American & Foreign Ins. Co.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge.

These appeals are from a judgment entered upon the verdict of a jury in an action upon a policy of insurance described as a Jeweler's Block Policy, covering loss from any cause, with certain exceptions not relevant to this case.

The claim arose from the robbery of a small jewelry store which the plaintiff conducted at Ardmore, Pennsylvania. On December 21, 1940, at about noon, two armed men entered the store by the street door, and looted it of practically the entire stock, part of which was in the show window and part in the vault. The total value of the articles stolen was $10,700, of which $7,891 represented jewelry displayed in the show window and $2,809 jewelry in the vault. The robbers did not smash or cut the plate glass window. The facts relating to the robbery were undisputed and evidence of the value and location of the jewelry taken was supplied by the defendant.

The verdict was for the plaintiff in the full amount of his claim less $2,891 (the amount by which the value of the jewelry taken from the show window exceeded $5,000), the Court having instructed the jury to make the deduction. Both sides have appealed, the defendant from the Court's refusal to set aside the verdict and the plaintiff from the Court's refusal to enter judgment for him in the full amount of his claim.

The Defendant's Appeal (No. 8343)

The defendant's contention is that the plaintiff by displaying more than $5,000 of jewelry in the window breached a warranty and so avoided the policy.

The policy was issued upon a "Proposal" which consists of four pages of questions, with answers supplied by the insured. One of its provisions is " * * * it is agreed that this proposal shall constitute a Warranty should a Policy be issued." A recital in the policy is "whereas, the assured hereby warrants the truth of each and every statement and particular contained therein" (referring to the Proposal).

The Proposal contained the following:

"3. Show Windows

* * * * * *

"(c) What will be the maximum value displayed?

"(1) when premises are open for business ... (in any one window) ...$5,000."

It is not disputed that the amount actually displayed in the show window was in excess of $5,000.

■■ The law of Pennsylvania governs. "A warranty proper, carrying with it the avoidance of the policy in case the fact is not as warranted, is limited to the warranty of an existing fact and will not be extended so as to include promises or agreements as to future acts. Breach of the latter will not be held to avoid the policy unless they are material to the risk insured against." Karp v. Fidelity-Phoenix Fire Ins. Co., 134 Pa.Super. 514, 4 A.2d 529, 531.

■ The promise here is "as to future acts"—the value of jewelry to be kept in the window during business hours. It is perfectly clear that the answer which set $5,000 as the maximum was elicited in connection with the risk of loss through window smashing or cutting—a form of robbery so common that the parties made it the subject of a clause in the policy and two endorsements. The promise is obviously material to that risk, but any fancied relation between the proportion of the merchandise kept in the store window and the risk that the store would be robbed in a hold-up by armed bandits during business hours is too tenuous and speculative to support a finding that the promise is material to the risk of that kind of robbery.

The decision in Price v. Century Indemnity Co., 333 Pa. 337, 5 A.2d 130, is not in conflict with the Karp case, supra. It has no bearing on a case involving breach of a promise, such as the one in this case, not material to the risk. The promise in the Price case was that a guard would always accompany the person who carried the jewelry insured—a promise clearly material to the risk of hold-up, which was the way in which the loss was incurred.

We therefore hold that the fact that the insured had some 50 percent more jewelry in the window than he had agreed to keep there did not avoid the policy in so far as it insured against loss by armed robbery.

The Plaintiff's Appeal (No. 8348)

■ The trial judge held that the contract of insurance set a limit of $5,000 upon the Company's liability for loss of jewelry in the show window.

There is nothing in the policy itself to that effect. The ruling was based upon an

answer in the section of the Proposal which was quoted from earlier in this opinion.

The following are the provisions of the insurance contract which are important in this connection:

An endorsement limits to $5,000 the liability of the insurer for loss from window smashing.

The endorsement also cancels Clause (L) of the policy, which provided that the insured should bear 20 percent of any such loss.

Question and answer 3(a) of the Proposal: "Maximum value to be covered when premises are open for business

"(1) in all windows .....................
....... (unprotected          $5,000
"(2) in any one window .................
....... (unprotected          $5,000".

The question here is whether the answer to 3(a) relates only to window smashing or whether it is a general limitation upon liability for loss from the window however it may have been incurred.

The whole Proposal is divided by ruled lines into 20 separate blocks, each of which contains a group of questions and the insured's answers to them. (Incidentally, this may have been the reason why the policy was called a "Block" policy). The questions in each block deal with a different phase of the general risk, and many of them relate to special kinds of risks. For example, one has to do entirely with the type of safe used in the store, another with goods in the custody of repairers, etc., another with loss of shipments by mail or express, and others with loss by fire and with loss of jewelry on exhibition elsewhere than in the store.

While Section (or Block) 3 is captioned merely Show Window, so far as its provisions and questions expressly refer to any specific kind of risk they refer only to window smashing. Thus, in a note the insured is reminded of Clause (L) in the policy to the effect that he will have to bear 20 percent of the loss occasioned through window smashing. Question (d) asks how his window is protected against window smashing and a second note carefully defines what is meant by "protecting" a window, referring to metal bars, grill, etc. There is also the question as to the maximum value of the display in the window, quoted in the first part of this opinion, which bears a very close relation to the window smashing and

little or none to losses from the window occasioned otherwise. The arrangement of the Proposal itself, and the ideas associated in Sec. 3 with the limitation in question, thus strongly suggest that the limitation was not intended as a general one but was understood to relate to window smashing.

Another indication is that, though the body of the policy contains no general limitation of the amount of liability for loss from show windows, it does contain such general limitations as to other specific losses, e. g. Clause (M) which puts a $10,000 limit on liability for loss of jewelry in transit. It would seem very unlikely that a matter as important as a general limitation of liability for loss of show window jewelry through any kind of robbery, if one were intended, would be left to a mere question and answer in the Proposal and not mentioned in the body of the policy.

Taking the contract of insurance as a whole including the Proposal and endorsements, all becoming effective at one time, we have, if the defendant's theory of the general nature of the limitation of 3(a) be accepted, wholly unnecessary over-lapping and repetition All that would have been necessary is one general limitation clause in the amount of $5,000 for jewelry in the show window. If the defendant's theory be accepted, the parties having limited liability for all kinds of losses from the show window to $5,000 would appear then to have again proceeded by the endorsement to limit the liability for window smashing to the same amount. The defendant suggests that, by reason of the 20 percent co-insurance feature of Clause (L) in the policy, window smashing risk and general risk required separate treatment. This might have been so had Clause (L) remained in the policy but, with the endorsement in, Clause (L) was out. We do not say that this duplication would have created a conflict, but if question 3 (a) was intended to refer only to window smashing the whole contract is perfectly clear and free from redundancy. We think the rational construction of the contract is one which will give it this clear meaning.

In No. 8343, the appeal is dismissed for want of merit. In No. 8348 the judgment is reversed and the cause remanded with directions to enter judgment in favor of the plaintiff for the full amount of the claim with interest.