### PUGH v. COMMONWEALTH MUT. FIRE INS. CO. OF PENNSYLVANIA.

#### Civ. No. 9828.

United States District Court
E. D. Pennsylvania.

Feb. 16, 1951.

890

Abe J. Goldin, Philadelphia, Pa., for plaintiff.

J. Webster Jones, Philadelphia, Pa., for defendant.

McGRANERY, District Judge.

1. Plaintiff, F. O. Pugh, is a citizen of the State of Texas, and the defendant, Commonwealth Mutual Fire Insurance Company of Pennsylvania, is a mutual insurance corporation, incorporated under the laws of the Commonwealth of Pennsylvania.

2. The Alamo Casualty Company of San Antonio, Texas, had issued a policy of fire insurance covering plaintiff's premises, at the time located just outside the city limits of Dallas, Texas. The coverage was in the amount of $2,000. on a building and $2,000. on the contents, at rates of $2.10 per hundred on the building, $2.38 per hundred on the contents, and $.26 per hundred for extended coverage.

3. On May 4, 1948, during the term of the Alamo policy, and before the occurrence of the fire occasioning this suit, the defendant issued to plaintiff an excess policy, covering the same property as did the Alamo policy. Defendant's policy was countersigned at Philadelphia, Pa., by Charles T. Easterby, for the general agent of the defendant, and posted in Philadelphia to P. R. Clark of Dallas, Texas, the plaintiff's broker.

4. At the time of the issuance of the defendant's policy, the premises subject to the insurance had been incorporated within the city limits of Dallas, Texas.

5. The coverage of the policy issued by defendant was in the amounts of $2,000. for the building and $2,000. for its contents, at rates of $2.10 per hundred less 5% and $2.38 per hundred less 5% respectively, and $.26 per hundred for extended coverage.

6. Defendant's policy contained the following endorsement, countersigned May 4, 1948, "effective date 4/28/48": "Warranted same terms and conditions as and to follow the settlements of the Alamo Casualty Company and that said Company has at the time of any loss, and at the same gross rate at least $4,000.00 divided $2,000.-00 on building and $2,000.00 on contents on the identical subject matter and risk, and in identically the same proportion on each part thereof."

7. On December 4, 1948, a fire occurred on the insured premises, totally destroying the building and contents.

8. The Alamo Company paid the sum of $3,504.17 to plaintiff as its pro-rata share of the fire loss, in full satisfaction of the plaintiff's claim against that company. The defendant has admitted that, if it has any liability on its policy with the plaintiff, it is liable in the amount of $3,504.17.

9. The defendant disclaims liability for the fire loss under its policy, solely on the ground of breach of warranty contained in the endorsement quoted in the Sixth Finding of Fact, in that it received smaller premiums than did the Alamo Company.

10. The rates which may be charged by fire insurance companies doing business in Texas, on the premises here involved, were at all relevant times fixed by the Insurance Department of the State of Texas.

Discussion

The defendant takes the position that the endorsement quoted in the Sixth Finding of Fact constitutes a warranty, which has been breached, thereby relieving it from liability under its policy. There was an apparent

difference in rates under the two policies, resulting from the location of the premises in relation to the city limits of Dallas, Texas, on the dates of the issuance of the respective policies. The Alamo policy, having issued before the incorporation of the property into the city limits, did not contain the 5% experience credit written into the defendant's policy, which issued after the incorporation of the property into the city limits. Consequently, the defendant received premiums amounting to 5% less than did the Alamo Company (except for the amount for extended coverage, the same in both cases).

■ It is a familiar proposition that a warranty must be literally fulfilled, or else the policy is avoided. But as a consequence of this doctrine, warranties are not favored. Miller v. National Casualty Co., 62 Pa.Super. 417. And an examination of the language of the endorsement leads me to the conclusion that it is not a "warranty proper." "A warranty proper, carrying with it the avoidance of the policy in case the fact is not as warranted, is limited to the warranty of an existing fact that will not be extended so as to include promises or agreements as to future acts." Karp v. Fidelity Phenix Fire Ins. Co., 134 Pa.Super. 514, 518, 4 A.2d 529, 531, cited in Diesinger v. American & Foreign Ins. Co., 3 Cir., 138 F.2d 91. The language of the endorsement refers to a condition existing at a future time: "at the time of any loss". It may be characterized as a "promissory" or "executory" warranty, or more strictly speaking, as a covenant or a condition, and a breach will not be held to avoid the policy unless it is material to the risk insured against. Karp v. Fidelity Phenix, supra. Under the circumstances here, I believe that the risk was not materially affected. The defendant received a premium of $95.-52 rather than $100.00, a difference undoubtedly resulting from an inadvertence rather than from any attempt of the plaintiff to deceive the defendant into undertaking a risk which it would not otherwise have assumed. In fact, it appears that prior to the fire, defendant had been requested to substitute the Inter-County Mutual Insurance Company for the Alamo, be-

cause the basic policy was to be carried by Inter-County upon the expiration of the Alamo policy on December 19, 1948. The substitution was made (although after the date of the fire), to become effective on December 19. It is to be presumed that the Inter-County rates would have contained the 5% credit, under the rates promulgated by the Insurance Department of the State of Texas. And if the fire had occurred during the effective dates of the Inter-County and Commonwealth policies, the defendant would have been in no position to claim breach of warranty. The inference is inescapable that whatever difference in rates appeared between the Alamo policy and defendant's policy, it was not a difference which was material to the risk, but rather a detail unfortunately overlooked by the parties at the time of the issuance of the defendant's policy. The defendant did receive the premiums which Texas insurance companies were permitted by law to receive on plaintiff's property on the date of the loss; consequently no real prejudice accrued to the defendant, certainly not a prejudice substantial enough to work an avoidance of the policy.

■ Furthermore, a strong argument can be made that the terms of the endorsement were not violated at all. The same "gross rate" was paid to the defendant as to the Alamo Company, under the language of the endorsement. It was merely the net rates which differed, by the 5% credit applied to property located within the city limits of Dallas. In fact, it might be presumed that there was not even a difference in net rates. The deposition of one Percy R. Clark, a licensed insurance broker in the State of Texas, states that the rates for the class of property here involved are specifically promulgated by the Insurance Department of the State of Texas. Therefore, it is to be presumed that the rates charged by the Alamo Company were thus promulgated according to law. If the plaintiff's property became entitled to a 5% credit after its incorporation into the city limits of Dallas, it is to be presumed that the plaintiff was entitled to an adjustment in the rates under the Alamo policy. If, through oversight, the plaintiff did not

claim the benefits of the lower rate or the Alamo Company did not make an appropriate adjustment, then the plaintiff was paying the Alamo Company an amount in addition to the legal rate which, presumably, he could recover, and which was not properly a part of the premium rates. By this line of reasoning, then, it may be said that the rates paid under the Alamo policy were not greater than the rates paid under the defendant's policy.

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter of this case.

2. The insurance contract between the plaintiff and the defendant became effective in the State of Pennsylvania and Pennsylvania law is applicable in its interpretation.

3. There has been no breach of a warranty in the insurance contract between plaintiff and defendant.

4. There has been no violation of the terms of the endorsement contained in the insurance contract effective to avoid the policy.

5. The defendant is liable to the plaintiff in the amount of $3,504.17, as its prorata share of the fire loss to the plaintiff.