## PUGH v. COMMONWEALTH MUT. FIRE INS. CO. OF PENNSYLVANIA.

### No. 10514.

United States Court of Appeals
Third Circuit.

Argued Dec. 18, 1951.

Filed March 13, 1952.

---

J. Webster Jones, Philadelphia, Pa., for appellant.

M. Stuart Goldin, Philadelphia, Pa. (Abe. J. Goldin, Goldin & Goldin and Levi, Mandel & Miller, all of Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

Where a policy of fire insurance contains an endorsement that its terms and conditions at the time of any loss will be the same as the terms and conditions of a policy of co-insurance previously issued on the same property, is the second insurer relieved of liability by virtue of the fact that it received a smaller premium than its co-insurer?

That is the question presented by the instant appeal by the Commonwealth Mutual Fire Insurance Company of Pennsylvania ("Commonwealth"), defendant below, from an order of the District Court denying its motion under Fed. Rules Civ. Proc. Rule 52(b), 28 U.S.C. to amend the Court's conclusion of law that the plaintiff was entitled to judgment, and from the judgment in favor of the plaintiff.

The pertinent facts giving rise to the appeal are as follows: On May 4, 1948, Commonwealth issued to one F. O. Pugh, plaintiff below, a policy of fire insurance on the latter's premises, which were operated as a cafe known as "Fred's Place" just inside the city limits of Dallas, Texas. This policy was issued upon the written application of Pugh's broker, Percy R. Clark, of Dallas, and was countersigned on behalf of Commonwealth at Philadelphia, Pennsylvania. Prior to this time there was in effect a policy of co-insurance issued by the Alamo Casualty Company of San Antonio ("Alamo"), covering the same premises for equal amounts—$2,000 on the building and $2,000 on the contents. The Alamo policy had been issued in 1947, before the incorporation of the property into the geographical limits of the city of Dallas by ordinance of the city council. Coverage was at the gross rates of $2.10 per hundred on the building and $2.38 per hundred on the contents, these being the maximum legal rates on property so located, as promulgated by the Insurance Department of the State of Texas. How-

ever, after the inclusion of the property in Dallas proper, it became entitled to a 5 per cent experience credit on building and contents by reason of coming under the superior protection of the city's fire fighting facilities; and these lower rates were in effect at the time Commonwealth issued its policy. Thus, whereas Alamo had received a premium of $100, Commonwealth received only $95.52 for the same coverage.[1] The Commonwealth policy contained the following typewritten endorsement: "Warranted same terms and conditions as and to follow the settlements of the Alamo Casualty Company and that said Company has at the time of any loss, and at the same gross rate at least $4000.00 divided $2000.00 on building and $2000.00 on contents (subject to reduction by amount of any loss not reinstated) on the identical subject matter and risk, and in identically the same proportion on each part thereof."

On December 4, 1948, a fire occurred on the insured premises, totally destroying the building and contents. Pugh received the sum of $3,504.17 from Alamo, representing that company's pro-rata share of the loss. Through his broker, he made claim against Commonwealth for a similar amount. Commonwealth denied liability under the terms of the policy and Pugh then brought suit. The cause was originally tried to a jury, but both sides agreed that there were no factual issues in dispute, whereupon the trial judge dismissed the jury and decided the question of liability as a matter of law. The Court concluded that Commonwealth was liable to Pugh for its share of the fire loss, and entered judgment for the plaintiff in the amount of $3,504.17 plus interest and costs. D.C.E.D. Pa.1951, 95 F.Supp. 889. This appeal followed.

Commonwealth contends that the endorsement quoted above constitutes a warranty, the breach of which relieves it of liability under the policy. Commonwealth's

president, Charles T. Easterby, testified that often the only way a Pennsylvania company can underwrite risks outside the state, for which no accurate rating data are available, is to issue a policy subject to a warranty that the property has been insured on the same terms and conditions by a local company which is more in a position to determine the risk. The local company, Alamo in this instance, is referred to in insurance parlance as the "warranty company". Easterby stated that "When a policy is issued on a warranty we obligate ourselves to follow the settlement and conditions of the warranty company, and accept in like sum whatever claim they accept, providing we are getting the same rates and the same conditions as they are, and all we do is accept whatever settlement they give, plus the fact that the warranty company sends us in a certified warranty certificate setting forth the rate at which their policy is written, and giving us copies of the data. So that we request nothing, relying entirely on the warranty company." Thus, Commonwealth contends that, since its policy was "Warranted same terms and conditions as" the Alamo policy, it had a right to expect that it would receive the same premium as Alamo did; hence the fact that it actually received 5 per cent less than Alamo constitutes a breach of warranty which automatically avoids the policy. We cannot subscribe to this contention.

This being a Pennsylvania contract, the parties are in agreement that the law of Pennsylvania governs. Under Pennsylvania law it is well settled that warranties in an insurance policy must be literally fulfilled without regard to their materiality to the risk, or else the policy is avoided. State Mutual Fire Ins. Co. v. Arthur, 1858, 30 Pa. 315; Miller v. National Casualty Co., 1916, 62 Pa.Super. 417. However, under the rule of Karp v. Fidelity-Phenix Fire Ins. Co., 1938, 134 Pa.Super. 514, 4 A.2d 529, 531, "A war-

---

1. Under state law the insured was entitled to a refund of part of the Alamo premium for the period that policy was in effect after the passage of the ordi-nance. Both the Alamo and Commonwealth policies provided extended coverage at $.26 per hundred. This premium was not affected by the ordinance.

ranty proper, carrying with it the avoidance of the policy in case the fact is not as warranted, is limited to the warranty of an existing fact and will not be extended so as to include promises or agreements as to future acts. Breach of the latter will not be held to avoid the policy unless they are material to the risk insured against." The endorsement in the policy under consideration does not constitute a "warranty proper" since it does not warrant the truth of an existing fact. It specifically refers to a condition prevailing at a future time; i. e., "at the time of any loss". It is a promise that the Alamo policy will *then* be in effect on the same terms and conditions as the Commonwealth policy. Therefore, under the rule of the Karp case, breach of this promise will not void the policy unless the breach materially affects the risk involved.

A similar question was before us in Diesinger v. American & Foreign Ins. Co., 3 Cir., 1943, 138 F.2d 91. In that case, following the law of Pennsylvania, we concluded that the value of merchandise displayed in a jewelry store window was not material to the risk that the store would be held-up by armed robbers during business hours. We therefore held that the fact that the insured had some 50 per cent more jewelry in the window than he had agreed to keep there did not avoid the policy in so far as it insured against loss by armed robbery.

Likewise, in the instant case, the fact that Commonwealth received 5 per cent less for its policy than Alamo did not increase the likelihood that the property would be destroyed by fire. The 5 per cent difference in rates was based upon the fact that at the time Commonwealth issued its policy the risk was estimated to be 5 per cent less than at the time of the Alamo policy. The lower rate was fixed by law; the purpose of imposing it was to provide that the premium received by the insurer should reflect the risk insured against as accurately as possible. The failure of the insured, through inadvertance or otherwise, to claim a refund from Alamo, as he was legally entitled to do once the property had been incorporated into the city limits, did not in any way affect the risk which Commonwealth undertook to insure.

We, therefore, are of the opinion that the endorsement in the Commonwealth policy did not amount to a "warranty proper" under Pennsylvania law; and that Commonwealth is not relieved of liability under its policy by virtue of the fact that it received a smaller premium than its co-insurer.

The judgment of the District Court will be affirmed.