**NATIONAL FARMERS UNION PROPERTY and CASUALTY COMPANY, Plaintiff in Error,**

v.

**Lewis M. WATSON, Defendant in Error.**

No. 37084.

Supreme Court of Oklahoma.

May 15, 1956.

Rehearing Denied June 19, 1956.

Butler, Rinehart & Morrison, Oklahoma City, for plaintiff in error.

Lewis M. Watson, pro se, and King & Wadlington, Ada, for defendant in error.

BLACKBIRD, Justice.

This appeal involves an action by defendant in error, as plaintiff, to recover against plaintiff in error, as defendant, a "loss" sustained by him under the terms of a policy of insurance issued to him by plaintiff in error covering "collision" or "upset" of his automobile. The parties will hereinafter be referred to by their trial court designations.

Defendant has never denied liability to plaintiff for the car's damages to the extent they are covered under its interpretation of the policy. The parties' controversy, which culminated in the filing of this action, orginated in a disagreement as to whether the installation of a new frame should be included in the repairs and replacements for which defendant was liable under the policy. This disagreement became evident a few days after the collision, which occurred in Oklahoma City while plaintiff was driving the car, a 1953 model Chrysler sedan, on a trip from Ada, Oklahoma, where he resided. Criss Coulter, of Oklahoma City's Criss Coulter Body Works, who examined the Chrysler at defendant's request the next day after the collision and before its removal from the Oklahoma City garage, where it had remained since the accident, estimated that it could be repaired for a total expenditure of only $537.65. After this estimate was made, the car was returned to Ada, where it was examined at that City's Chrysler agency, Sinnett-Meaders Motor Company. This company estimated the cost of the car's needed repairs and replacements, including installation of a new frame, at $1,029.10. On the basis of this latter estimate, plaintiff took the position that installation of a new frame was a necessary repair, while defendant maintained that the car could be satisfactorily repaired by merely straightening the old frame. When this principal issue failed to be resolved through correspondence and long distance telephone calls, and after defendant had sent a Mr. Lamberson of an appraisal or adjustment agency known as "Independent Appraisers" to Ada to view the car and make his estimate of its needed re-

pairs, defendant company's Mr. Manaugh visited plaintiff in Ada, on October 15, 1954, and offered, on behalf of defendant, to have plaintiff's car repaired in Oklahoma City as contemplated in Mr. Lamberson's estimate calling for a total expenditure of $682.05, less the $50 deduction specified in the policy. Lamberson's estimate, like ·Coulter's earlier estimate of $537.65, did not include the cost of installing a new frame, however. Plaintiff rejected this offer, as he had the earlier one. Thereafter, on October 27, 1954, he purchased fire and theft insurance on the damaged car and had Sinnett-Meaders Motor Company place it in what was termed "Dead storage", where it has since remained. On October 29, 1954, he purchased another automobile. When he thereafter commenced the present action on November 4, 1954, he tendered the old car to defendant and sued it for a total of $2,335, as the damaged car's total replacement cost for which he alleged defendant was liable under the policy, but, in addition to the allegations on which this figure was based, he also alleged a difference of $1,650.00 in the value of said car immediately before and immediately after the collision, and that he had suffered damages by reason of defendant's refusal to indemnify his loss under the policy in the following items, among others:

(1) Deprivation of the use of his automobile for 26 days at $5 per day, or a total of $130;

(2) Storage on the damaged automobile in the amount of $15 and insurance on it at a cost of $10.

After the evidence was all in, plaintiff withdrew his previous tender of the old car to defendant and upon submission of the cause to the jury a general verdict was returned for plaintiff in the amount of $1,750. Judgment, was entered accordingly and defendant has perfected the present appeal.

The first alleged error, of which defendant complains, is mentioned in its counsel's argument under their "Proposition Number I". It is there said that the trial court erred in refusing, as requested by defense counsel, during plaintiff counsel's opening statement, to require plaintiff to elect whether he would proceed to trial up-on the theory that his old car was a total loss, or, upon the theory that it was repairable. As hereinbefore indicated, plaintiff in his petition not only prayed for damages of ($2,335) $35 more than the $2,300, which he alleged was the value of his car before the accident, but he also alleged it had an actual cash value thereafter of $650. Since the record reveals no ruling upon any of defendant's objections to plaintiff's pleading, the latter is not before us, Ward v. Coleman, 170 Okl. 201, 39 P.2d 113; and we do not think that, under the circumstances, the trial court abused its proper discretion in overruling the motion made on behalf of defendant during plaintiff's counsel's opening statement. In this connection see authorities cited in Gypsy Oil Co. v. Colbert, 179 Okl. 321, 65 P.2d 505, 508, 510, and 71 C.J.S., Pleading, § 490. If such was error, it must be regarded as harmless, in view of the fact that before the close of the evidence plaintiff withdrew the tender he had, on the theory that it was a total loss, previously made to defendant of his old car. It is plain from the amount of the verdict that the jury fixed plaintiff's recovery for damage to his car, not at the full cost of another one like it was before the collision, but only at the difference of $1,650.00 (according to the undisputed evidence) between its value before and after the accident. In this connection see Rotan Motor Co. v. Farmers & Merchants State Bank, 207 Okl. 271, 249 P.2d 125·; Home Ins. Co. of New York, N. Y., v. Voto-Jacobus Motor Co., 189 Okl. 426, 117 P.2d 779; 41 Am.Jur., "Pleading", sec. 404 et seq.; 71 C.J.S., Pleading, § 599. As the case was neither submitted, nor adjudicated, on the theory of total loss, but upon the "difference in value" theory, plaintiff was certainly entitled to keep his old car. For this reason, we cannot agree with the further statement, at another place in defendant's original brief, that the remarks of the judge on the second day of the trial confused the jury "by inferring that no matter what damages * * * (it) should award, plaintiff was entitled to keep the car."

All of the rest of defendant's briefs may be dealt with under its argument that "all

of the instructions of the court which permitted the jury to award damages for anything other than the reasonable cost of" repairing the car were error.

In its Instruction No. 6, the court told the jury that if it found from the evidence that plaintiff's automobile *could have been restored* to its condition immediately prior to the collision, it should award him a sum equal to the reasonable cost of such repairs necessary to restore the auto to the same condition it was in immediately prior to the collision, less the $50 deductible under the policy. Instruction No. 5 told them that if they found the auto could *not* be repaired so as to thus restore it, they should award plaintiff the difference between its fair market value immediately before the collision and such value immediately thereafter, less the $50 deduction. Despite the fact that the insurance policy plaintiff sued on was in evidence for the jury to see and read, defendant requested the court, by the second of its requested instructions, to specially call the jury's attention to paragraph 13 of the policy's "conditions" as "the limit of the company's liability * * *". This paragraph, as copied verbatim in said requested instruction, reads in part as follows:

"The limit of the company's liability for cost shall not exceed the actual cash value of the automobile, or if the cost is a part thereof, the actual cash value of such part at the time of loss nor what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation * * *.

"The company may pay for the cost in money or may repair or replace the automobile or such part thereof, as aforesaid * * * or may take all or such part of the automobile at the agreed or appraised value * * *".

Following the citation of Lincoln v. General Casualty Co. of Wisconsin, 243 Iowa 1280, 55 N.W.2d 321, defense counsel quotes excerpts from the testimony of plaintiff as showing that he did not want the car in question repaired by anyone except Ada's Sinnett-Meaders Motor Company, the agency at which he purchased it. Then they quote excerpts from the testimony of plaintiff's witness, Mr. Sinnett of said company, and say: "There is not one scintilla of evidence by any witness that the plaintiff's automobile could not be repaired and restored to substantially its condition prior to the accident." Counsel apparently adopt the word "substantially" from Aviation Industries v. East & West Ins. Co., Idaho, 211 P.2d 156, 158, where the court used it in its statement of the "real issue" in that case under the policy there involved. The pertinent provisions of that policy are not quoted in the cited opinion but the Lincoln case, supra, and Karp v. Fidelity Phenix Fire Ins. Co., 134 Pa.Super. 514, 4 A.2d 529, both show that the proper measure of recovery, under a policy provision in no material respect different from paragraph 13, supra, as to an automobile that *can* be repaired, is the cost of putting it in as good condition as it was before the collision, just as said measure was described in the court's Instruction No. 6, supra (omitting the word "substantially"). In this connection, see also Standard Accident Ins. Co. of Detroit v. Richmond, Tex.Civ.App., 29 S.W. 879. We do not agree that there is no testimony authorizing the giving of this instruction. Nor do we think it material what any particular part of plaintiff's testimony reveals concerning his preference as to where the car was repaired, or by whom, as long as the evidence as a whole warrants the conclusion that he never refused to let defendant repair the car in accord with the correct interpretation of the policy's applicable provisions. Since the sufficiency of the evidence to support the verdict and judgment was never challenged and is not herein presented, it is necessary only to say that we find adequate basis in the testimony of plaintiff and his witness, Mr. Sinnett, for the giving of an instruction submitting to the jury the question of whether or not plaintiff's car, by repairs and replacements, could be put in as good condition as it was in before the collision, and prescribing, in the event this question was answered in the negative, the measure of plaintiff's recovery for car damage. We think that by com-

paring plaintiff's evidence with the testimony of defendant's witness, Criss Coulter, the jury might well have concluded that the latter's examination of plaintiff's car, upon \.;hich his estimate of its damage was based, was not as thorough as that of Sinnett-Meaders Motor Company. Mr. Coulter himself admitted that he had never discovered (as did plaintiff and Mr. Sinnett) that the car's frame was buckled or bent *between the front and rear wheels,* shortening its wheel base. The evidence warranted a conclusion that Coulter's opinion that the car could be put in a "serviceable" condition by the more or less simple and inexpensive expedient of straightening or "springing" its frame into shape (in addition to repairing or replacing other parts) was based upon insufficient knowledge of its condition. Nor was the examination of Mr. Lamberson, the only other appraiser upon which defendant relied in maintaining that plaintiff's car was repairable within the terms of the policy (without installation of a new frame) shown to be any more thorough than Mr. Coulter's.

▪ In its Supplemental Brief defendant also argues: "Assuming in the instant case that plaintiff's automobile needed a new frame and the old one could not be repaired, the (insurance) contract did not obligate the company beyond the cost of such repair as would have included it." We find no merit in this argument. Phoenix Ins. Co., Hartford, Conn. v. Diffie, Okl., 270 P.2d 634, 637, involved the same kind of policy as is involved here. There we said: " * * unless the collision resulted in a total loss of the automobile plaintiff's measure of recovery was the difference between the fair market value of his automobile in the condition in which it was immediately prior to the collision, and its value thereafter." Defense counsel's pointing out that some of the facts in the cited case are different from some here fails to demonstrate that the quoted statement is not applicable here; and the quotations from the case of Home Mut. Ins. Co. of Iowa v. Stewart, 105 Col. 516, 100 P.2d 159, on which they rely, readily show that case inapplicable.

▪ Defendant's final complaint concerning Instructions No. 5 and 6 involves their last part, which authorized the jury, in addition to the car damage, to award plaintiff "such other items of special damages" as might be authorized by other instructions. Items of additional damages which defendant claims were not recoverable were dealt with in the court's Instructions No. 7, 8 and 9. Instruction No. 9 authorized the jury to award plaintiff up to $200 if it found that defendant wrongfully or willfully failed, refused or neglected to perform its obligations to plaintiff under the policy and to compensate him for the damages to the insured automobile, and that by reason thereof, plaintiff suffered loss by way of depreciation in the value of said auto after the collision occurred. The only evidence in the record as to the depreciation referred to, was the undisputed testimony of Mr. Sinnett that between the time of the collision and "now" (presumably the date of his testimony) the car depreciated in value "approximately" $200. On the basis of this testimony the jury had no criterion for allowing plaintiff any less than $200, if anything, for such item. Since the verdict was for only $100 more than the $1,650, which was the uncontradicted difference in the value of the car immediately before and immediately after the accident, we must assume that the verdict's lump sum assessment included nothing for this item. We therefore conclude that if Instruction No. 9 was error, it was harmless and without prejudicial effect. In this connection see St. Lewis-S. F. Ry. Co. v. Withers, Okl., 270 P.2d 340, and Larkins-Warr Trust v. Watchhorn Pet. Co., 198 Okl. 12, 174 P.2d 589.

▪ Instruction No. 7 allowed the jury to award plaintiff damages to compensate him for funds he might be found to have reasonably and necessarily expended in protecting and preserving the insured automobile. One of these items was a storage charge which plaintiff testified, without contradiction, amounted to $15. Following our pronouncement in Phoenix Ins. Co., Hartford, Conn. v. Diffie, supra, where the policy involved contained the same provision as the one herein with reference to " 'reasonable expense incurred' " in protecting the automobile being " 'deemed incurred at the

company's request;' * * * ", we hold that said storage charge was recoverable by plaintiff. We also hold that reasonable cost of insuring the damaged car against fire and theft during the storage period is also recoverable under such a policy provision. However, since, in his petition plaintiff sought recovery of a total of only $25 for these two items, that sum was all he could recover therefor, though he testified that his expenditure for such insurance totalled $12.50 (rather than the difference of only $10 between the storage charge of $15 and the total of $25 he petitioned for). In addition, plaintiff testified that he had expended the total sum of $17.05 for long distance telephone calls during his controversy with defendant, but this total was not broken down, itemized or identified in such a manner that any definite part of it could have been attributed by the jury as having been rendered *necessary* either to the protection of the damaged car or by defendant's refusal to perform its obligations under the policy. It will thus be seen from the foregoing, that plaintiff, on the basis of the evidence and within the limits of his petition, was entitled to a recovery of $1,600 ($1,650 less $50 under the standard deduction provision) plus $25, or a total of $1,625.

This leaves $125 of the verdict of $1,750 to be dealt with. Instruction No. 8, of which defendant also complains, authorized the jury, if it found plaintiff was deprived of the use of the car by reason of defendant's failure and neglect in performing its obligation under the policy, to allow him up to $130 to compensate him for such deprivation at the rate of $5 per day, not exceeding 26 days (the period which elapsed from the collision on October 3 to plaintiff's purchase of a new car, on October 29). There was no proper evidentiary criterion and basis for allowing plaintiff the whole, or any certain part, of the total authorized for this item. We therefore hold that giving this instruction, as well as Instruction No. 7, in so far as it authorized the jury to award plaintiff more than $25 for protecting the damaged car, was error. However, we do not think these errors warrant reversal, if plaintiff will remit to defendant the amount of the verdict in excess of the amount he undoubtedly was entitled to recover under the correct portion of the instructions. Accordingly, the judgment of the trial court is affirmed upon condition that, within 10 days of the issuance of the mandate herein, plaintiff file in the trial court, a remittitur in the total sum of $125. Upon this condition, and in accord with plaintiff's request herein, judgment is here rendered against St. Paul Mercury Indemnity Company, surety on defendant's supersedeas bond, to be entered and enforced by the trial court, as if there rendered. In the event of plaintiff's failure to file said remittitur, the judgment is reversed with directions to grant a new trial.

JOHNSON, C. J., WILLIAMS, V. C. J., and DAVISON, JACKSON and HUNT, JJ., concur.