## Miller Estate

*Raymond K. Hess,* for petitioner.
*Clement J. Cassidy,* for executrix.

WESNER, *J.,* June 5, 1980—This case is presently before the court on a petition for citation, filed by claimant, Richard I. Hart, Inc., to show cause why Sarah E. Miller should not file an account of her administration of the Estate of Lester M. Miller. Specifically, claimant seeks payment for two in-

surance policies it issued on the business property of decedent. By agreement of counsel, the amount of the disputed claim, $619, was placed in escrow by the executrix, thus obviating the need for the filing of an account.[1] Hearing on the matter was held on November 19, 1979.

## FINDINGS OF FACT

Lester M. Miller died on April 22, 1978. At the time of his death, he was the owner of the Village Store and Folklore Loft, located in Shartlesville, Pennsylvania. For several months prior to his death, decedent was critically ill and unable to manage the businesses. During his absence, these duties were performed by Helen Ahrens. It is undisputed that Mrs. Ahrens had authority to conduct the business.

Claimant, Richard I. Hart, Inc., is a corporation engaged in the business of selling insurance and provided such services to decedent for over 20 years.[2] Two such policies, providing fire and liability coverage, were sold by claimant to Mrs. Ahrens, acting for Mr. Miller, in July of 1976. Both policies, the Business Owner's Policy and the Standard Fire Insurance Policy, were initially effective and fully paid until July 29, 1977. At that time both were renewed for an additional year.

The total annual premium for the renewed Business Owner's Policy was $560 payable quarterly. One such installment was paid in December, 1977,

---

1. Notes of Testimony p. 2.

2. In the course of its business, claimant acts as an independent agent for six major insurance companies, selling and servicing policies issued by them. The disputed policies were issued by the Insurance Company of North America. This company is not, however, a party to this action.

leaving an unpaid balance of $420. The other policy had an annual premium of $199 payable in full. This policy was never paid for.

## DISCUSSION

A single issue is presented for our determination: Whether the mere nonpayment of premiums is sufficient, by itself, to terminate an insured's policy. If nonpayment of premiums is sufficient to terminate a policy, then the obligation to pay further premiums ceases and no recovery can be had by the claimant. However, claimant argues that mere nonpayment is not, by itself, sufficient and urges that although it could have treated the failure to pay premiums as a forfeiture of the policy, it chose not to and decided instead to keep it in force. We agree.

In reviewing this case, we are mindful that forfeitures are not favored by the law, and unless clearly established, will not be enforced: Diesinger v. American & Foreign Ins. Co., 138 F. 2d 91 (3d Cir. 1943). Provisions in a policy regarding cancellation or forfeiture are construed strictly against the insurer, and liberally in favor of the insured. See 14 Appleman, Insurance Law & Practice §8071 (1944). For example, where the right to cancel an insurance policy has been reserved in a policy, the insurer must fully comply with all the conditions set forth in the policy before the attempted cancellation will be effective: Roeser v. National Life Insurance Co. of North America, 115 Pa. Superior Ct. 409, 175 Atl. 887 (1934). If the policy provides for cancellation only on notice to the insured, then there can be no cancellation unless such notice is given. In addition, it is well established that while the failure to pay a premium may give the insurer

the right to cancel a policy, such a right is for the exclusive benefit of the insurer and may be waived: Schifalaqua v. CNA Insurance Co., 567 F. 2d 1255 (3d Cir. 1977).

Here, both policies contain cancellation clauses which provide that in order to successfully terminate the relation of insured and insurer, either party must first give written notice of cancellation to the other.[3] While no particular form of notice is necessary, it must be a positive and unequivocal act of cancellation, indicating unmistakably the intention of the cancelling party to no longer be bound by the policy. If the notice is equivocal or not indicative of a present cancellation, but a mere intention or desire to cancel in the future, cancellation will not be effected: Pomerantz v. Mutual Fire Ins. Co., 279 Pa. 497, 124 Atl. 139 (1924).

---

3. The Business Owner's Policy provides: *"Cancellation.* As the named insured, you may cancel this policy by mailing or delivering to us written notice stating when such cancellation shall take effect. We may cancel by mailing or delivering written notice to you, at the mailing address shown on page one of the policy, and to any mortgagee designated on that page. This notice shall state the effective date of cancellation, which shall not be less than 30 days after the date of mailing or delivery."

The Standard Fire Insurance Policy provides: *"Cancellation of policy.* This policy shall be cancelled at any time at the request of the Insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this Company by giving to the Insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand." See also: Act of May 17, 1921, P.L. 682, as amended, 40 P.S. §636, for standard policy provisions required by statute.

A review of the record discloses no such notice of cancellation from the claimant to decedent or his agent. Richard Hart, Jr., an employe of claimant, testified that the insurance agency never attempted to cancel the policies. In order to do so, it would have been necessary to first notify the issuing company, the Insurance Company of North America, of the default. It is undisputed that this was never done. Moreover, Mrs. Ahrens testified that in response to her inquiries regarding the status of the policies, she was informed by claimant that they were still in force and because of decedent's long standing relationship with Richard I. Hart, Inc., cancellation would not be forthcoming. Similarly, Richard Hart, the major stockholder of claimant, testified that he was fully aware that the premium payments were delinquent, but chose to keep the policy in force due to his long business relationship with decedent.

In short, the law is clear that there can be no notice of cancellation unless the insured is first given notice. Absent any such explicit notice in this case, we are fully convinced that claimant elected not to terminate the policies despite the failure of the insured to pay the premiums. Accordingly, the policies remained in force and claimant is entitled to payment for them. An appropriate order will be entered.

## CONCLUSIONS OF LAW

1. Mere nonpayment of premiums was not sufficient, by itself, to terminate the insurance policies.

2. Nonpayment of the premiums made the policies voidable at the insurer's option.

3. Even though the insurer had the right to terminate the policies for nonpayment of premiums, it

chose to waive this right and kept the policies in force.

## ORDER

And now, June 5, 1980, it is hereby ordered that the funds placed in escrow by the executrix, $619 plus interest, be paid over to Richard I. Hart, Inc., and, further, this adjudication is confirmed nisi and shall be confirmed absolutely as of course unless written exceptions have been filed within 20 days.